**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**BANKRUPTCY DIVISION**

IN RE:
**JEFFREY J. PROSSER**

        **Debtor.**

**Case No.: 06-30009 (JKF)**
**Chapter 7**


**JAMES P. CARROLL, as Chapter 7**
**Trustee of the Estate of Jeffrey J. Prosser,**

        Plaintiff,

**v.**

**JOHN D. KLINGERMAN and DAWN**
**PROSSER,**

        **Defendants.**

**Adv. Proc. No. 09-03001 (JKF)**

**Related to Adv. Doc. No. 11** [Plaintiff's Motion for Partial Summary Judgment Against All Defendants]


**MEMORANDUM OPINION[1]**

Before the court is the "Motion for Partial Summary Judgment Against All Defendants" (hereinafter, the "Motion") filed by James P. Carroll, the Chapter 7 Trustee of the Estate of Jeffrey J. Prosser. Adv. Pro. No. 09-03001, Adv. Doc. No. 11. In the Motion, the Trustee asks the court to grant summary judgment in his favor and against Defendant John D. Klingerman as to Counts I and II and to grant summary judgment against Defendant Dawn Prosser as to Count IV of the "Amended Complaint of Chapter 7 Trustee Seeking Damages in Connection with the Estate's Real Propery Located at 89 Victor Herbert Road, Lake Placid, New York and to

---

[1]The court's jurisdiction is not in question. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

Interplead Certain Funds Held in Reserve" (hereinafter, "Amended Complaint") (Adv. Pro. No. 09-03001, Adv. Doc. No. 3).[2]  Motion, Adv. Pro. No. 09-03001, Adv. Doc. No. 11, at 16.

Background

      Regarding Counts I and II, the Plaintiff and Defendant John D. Klingerman submitted a

Joint Statement of Undisputed Facts (hereinafter, the "Joint Statement"), dated April 20, 2010, at

Adv. Doc. No. 70 of Adv. Pro. No. 09-03001, which the court accepts and recites as follows:

1.      On July 31, 2006, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Division of the United States District Court for the United States Virgin Islands (the "Court"). [06-bk-30009, DE 1].

2.      On October 3, 2007, the Court entered an order converting the Debtor's case from Chapter 11 to Chapter 7 [06-bk-30009, DE 865], and John Ellis was appointed interim Chapter 7 trustee of the Debtor's estate.  On October 31, 2007, Mr. Ellis resigned as trustee and James P. Carroll was appointed successor trustee.

3.      By warranty deed recorded on September 4, 1996, the

_____

[2]Count IV appears to have been resolved by the Trustee and Defendant Dawn Prosser pursuant to a stipulation reached between those two parties during the pendency of this motion and subsequently approved by the court.  Stipulation and Agreed Order Between Chapter 7 Trustee and Dawn Prosser: (A) Settling and Resolving Limited Aspects of Adversary Proceeding; and (B) Providing for the Division and Sale of Certain Chandeliers and Stereo Equipment (hereinafter, the "Stipulation").  Adv. Pro. No. 09-03001, Adv. Doc. No. 28. Therefore, the Order attached to this Memorandum Opinion will set a status conference to confirm the resolution of Count IV, as well as to address Counts III, V, and VI of the Amended Complaint.  We note that Counts III, V and VI are not raised in Plaintiff's Motion for Partial Summary Judgment and are, therefore, not addressed in this Memorandum Opinion and attached Order.  However, because Counts III, V and VI are brought by the Plaintiff against Defendant Dawn Prosser, the Stipulation may affect these Counts and, as such, a status conference will be valuable in resolving this action.

      We also note that Count VII was not raised in the Motion for Partial Summary Judgment. However, because the Stipulation reached between the Trustee and Dawn Prosser appears to have rendered Count VII moot as to Dawn Prosser but still may affect Mr. Klingerman, the court has addressed the effect of this Stipulation on Count VII.  *See infra* note 27 and accompanying text.

Debtor and Dawn Prosser acquired as tenants by the entirety the Lake Placid Property.  See Order Granting Trustee Authority to Sell Dawn Prosser's Interest in the Real Property Located at 89 Victor Herbert Road, Lake Placid, New York, Subject to (A) Dawn Prosser's Rights of First Refusal, and (B) Certain Terms and Conditions, and Additional Limited Submissions of Evidence (the "Sale Authority Order." [Adv. Proc. No.] 08-03009, DE 33, attached as Exhibit "A").[1]

> FN 1.  Paragraph F of the Findings of Fact and Conclusion of Law in the Good Faith Deposit Order states that "All findings set forth in the Sale Authority Order are incorporated herein by reference and made a part hereof."  Accordingly, the Findings of Fact in the Sale Authority Order are binding upon the parties hereto by virtue of their incorporation into the Good Faith Deposit Order.

4.  The Lake Placid Property is a single family residence consisting of a luxury vacation home, guest house, boat house and garage located on 264 feet of waterfront footage on Lake Placed.  Id. at ¶ I, p. 3.

5.  Pursuant to the Sale Authority Order, the Court approved certain Bidding Procedures that permitted the Trustee to obtain bids on, hold an auction and sell the Lake Placid Property.  Id. (attached as an Exhibit to the "Sale Authority Order").

6.  The Trustee complied with the terms of the Sale Authority Order and the approved Bidding Procedures.  See Order Authorizing Fox Rothschild LLP, Escrow Agent to the Chapter 7 Trustee to Turn Over to the Debtor's Estate the $200,000 Good Faith Deposit Paid by John D. Klingerman in Connection with his Proposed Acquisition of Certain Real Property Located at 89 Victor Herbert Road, Lake Placid, New York, as a Result of Purchaser's Breach of the Court-Approved Bidding Procedures (the "Good Faith Deposit Order"), [Adv. Proc. No.] 08-03009, DE 89 at ¶ G, p. 3, attached as Exhibit "B".

7.  Mr. Klingerman bid upon the Lake Placid Property and was the Successful Bidder as that term is defined in the Bidding Procedures.  See Good Faith Deposit Order at ¶ H, p. 3 (Exhibit "B").

3

8.      Mr. Klingerman expressly agreed to the Bidding Procedures and to be bound by them.  Id. at ¶ I, p. 3.

9.      By order dated July 23, 2008 and entered by the Court on July 30, 2008, the Trustee was authorized to sell the Lake Placid Property to Mr. Klingerman in accordance with the Bidding Procedures.  Id. at ¶ J, p. 3.

10.     As the Successful Bidder, Mr. Klingerman offered to pay the sum of $3.55 million to purchase the Lake Placid Property.

11.     Mr. Klingerman did not enter into a contract or close on the sale of the Lake Placid Property.  Id. at ¶ K, p. 3.

12.     By motion dated September 17, 2008, upon which Mr. Klingerman was provided notice and the opportunity to participate, the Trustee sought approval to retain the good faith deposit monies that Mr. Klingerman had tendered at that time he submitted his bid to purchase the Lake Placid Property. [[Adv. Proc. No.] 08-03009, DE 73].

13.     In granting the Trustee relief to retain the good faith deposit, the Court found that Mr. Klingerman was in breach of the Bidding Procedures by failing to sign an agreement or close on the sale of the Lake Placid Property.  See Good Faith Deposit Order at ¶ K, L, p. 3 (Exhibit "B").

14.     In granting the Trustee relief to retain the good faith deposit, the Court stated that the "Order shall not prohibit or limit the Trustee's or any other party's rights to seek additional damages against Mr. Klingerman in connection with his failure to close on the sale of the Lake Placid Property."  Id. at ¶ 5, p. 4-5.

15.     On December 15, 2009, Mr. Klingerman filed a motion (the "Motion for Reconsideration," inadvertently filed at Adv. No. 09-03001, DE 41 and re-docketed at Adv. No. 08-03009, DE 164) requesting that the Court reconsider the Good Faith Deposit Order.

16.     On March 12, 2010, the Court issued an Order Denying the Motion for Reconsideration (inadvertantly filed at Adv. No. 09-03001, DE 53 and re-docketed at Adv. No. 08-03009, DE 167).

17.     On November 4, 2008, the Chapter 7 Trustee closed on the sale of the Lake Placid Property to the next highest bidder for the sum of $2.7 million.

18.     In the Good Faith Deposit Order, the Court found, "[t]he Debtor's estate has been damaged by Mr. Klingerman's breach of the Bidding Procedures."  See Good Faith Deposit Order at ¶ L, p. 3 (Exhibit "B").

4

19.     The difference in the sale price offered by Mr. Klingerman
as the Successful Bidder and the sale price that was paid by
the next highest bidder is $850,000.[3]

Despite the provision in the Bidding Procedures that the successful bidder be "prepared

to enter into a legally binding purchase and sale agreement for the acquisition of the Lake Placid

Property . . . and close on that agreement within two (2) weeks of the entry of a Sale Order,"

(Bidding Procedures, Adv. Pro. No. 08-03009, Adv. Doc. No. 33, Exhibit 2, at 2), Mr.

Klingerman failed to comply with either requirement.

To qualify as a bidder, Mr. Klingerman produced proof that he had the then present ability

to close on the property by paying the bid price.  The proof was in the form of a letter from

Columbia County Farmers National Bank.  *See* Affidavit of James P. Carroll, Chapter 7 Trustee

of the Estate of Jeffrey J. Prosser, In Support of Entry of an Order Authorizing the Sale of the

Estate's and Dawn Prosser's Interest in the Real Property Located at 89 Victor Herbert Road,

Lake Placid, New York, Pursuant to 11 U.S.C. §§ 363(b) and (h) (hereinafter, "Carroll

Affidavit"), Adv. Pro. No. 08-03009, Adv. Doc. No. 46, Exhibit C, at 2.  *See also* Memorandum

of Law in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment

(hereinafter, "Defendant's Memorandum in Opposition"), Adv. Pro. No. 09-03001, Adv. Doc.

No. 29-8.[4]  *See also* Defendant's Memorandum in Opposition, Adv. Pro. No. 09-03001, Adv.

---

[3]The Joint Statement omits numerous communications by and between counsel to
Plaintiff and a succession of three attorneys representing Defendant Klingerman.  These
communications between Defendant Klingerman, counsel to Defendant Klingerman, the
Plaintiff, and counsel to the Plaintiff can be found as Exhibits to Mr. Klingerman's
Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion for Summary
Judgment filed at Adv. Doc. Nos. 29-31 of Adv. Pro. No. 09-03001.

[4]For clarity, we note that Defendant Klingerman's Memorandum in Opposition was filed
(continued...)

5

Doc. No. 31-9, at 2.  The letter, written by Mr. Edwin A. Wenner, the Executive Vice President

and Chief Operating Officer (COO) of Columbia County Farmers National Bank, specifically

stated that Mr. Klingerman "has the where with all [sic] to finance the purchase of the properties

in the amount of $3,500,000, if he desires to make such a purchase."  Defendant's Memorandum

in Opposition, Adv. Pro. No. 09-03001, Adv. Doc. No. 29-8.  Mr. Klingerman did not indicate at

any time prior to the sale that he needed or intended to obtain mortgage financing in order to

close on the property.  Further, Mr. Klingerman did not indicate that his bid was contingent on his

ability to obtain that financing.

Despite the condition in the Bidding Procedures that qualified only those bidders who had

financing ready before bidding and despite Mr. Klingerman's confirmed ability to close, Mr.

Klingerman delayed closing by attempting, unilaterally, to change the terms of the court-approved

Bidding Procedures first by asserting the need to obtain mortgage financing and then to make the

sale subject to an Internal Revenue Code § 1031 "like kind exchange" (26 U.S.C. § 1031).

According to the express terms of the court-approved Bidding Procedures, any effort by Mr.

Klingerman to obtain mortgage financing had to be successfully concluded *prior to* his bid

submission.  The Bidding Requirements provide that the bid must be "accompanied by

satisfactory evidence of committed financing or other financial ability to perform the acquisition

of the Lake Placid Property."  Bidding Procedures, Adv. Pro. No. 09-03001, Adv. Doc. No. 29-2,

---

[4](...continued)
at four individual docket numbers in Adv. No. 09-03001: Adv. Doc. Nos. 29, 30, 31, and 32.
The memorandum filed at each docket entry is identical; the exhibits attached to each docket
entry are different. Exhibits 1-10 were filed at Adv. Doc. No. 29; Exhibits 11-20 were filed at
Adv. Doc. No. 30; Exhibits 21-30 were filed at Adv. Doc. No. 31; and Exhibits 32-40 were filed
at Adv. Doc. No. 32.

at 2, ¶ a of Bid Requirements. This section makes clear that all financing was to be established

before Mr. Klingerman could be classified as a Qualified Bidder as defined in the Bidding

Procedures. Bidding Procedures, Adv. Pro. No. 08-03009, Adv. Doc. No. 33, Exhibit 2, at 2.

Similarly, had Mr. Klingerman desired to subject the sale to a § 1031 "like kind exchange," the

time to do so arose prior to his bid submission under the terms of the Bidding Procedures.

What actually happened to change Mr. Klingerman's desire to own this property is evident

from the transcript of the auction sale.  The auction sale was conducted by the Trustee with

bidders participating by telephonic conference call.  The next highest bid, submitted by the

ultimate purchaser of the Lake Placid Property, was in the amount of $2,500,001, i.e., $1,049,999

less than Mr. Klingerman's bid (Defendant's Memorandum in Opposition, Adv. Pro. No. 09-

03001, Adv. Doc. No. 32-7, Transcript of 7/16/2008 Lake Placid Property Auction Sale, at

20:5-7), and a fact that caused some consternation to Mr. Klingerman.[5]  *Id.* at 25:10-19.[6]  The

other Qualified Bidders, Ms. Toni Miles and Mr. Robert Clark as co-bidders, opted to stand on

their initial offer of $2,500,001.  Ms. Miles explained during the bidding that, after much thought,

she and Mr. Clark decided that they would not bid higher than $2,500,001 because they didn't

"believe that would be to [their] benefit paying overmarket with what is needed to be done, after

doing [their] due diligence."[7]  *Id.* at 20:22-25.  Counsel for the Trustee noted that "[he and the

---

[5]After Mr. Klingerman failed to close, the Trustee negotiated an additional $199,999 to
the alternate bid, resulting in a bid of $2,700,000.  Thus, the estate was damaged by $850,000.

[6]We note that the transcript from the July 16, 2008, auction sale is also docketed at Adv.
Doc. No. 29-10.

[7]Throughout the auction sale, Ms. Miles referred to her bid as "2.5" and/or "2 and a half
million."  However, the exact amount of the bid was $2,500,001, as clarified by Mr. Geron:
    MR. GERON:  [S]o, Ms. Miles, let me make sure I get this right,

                                                                        (continued...)

7

Trustee] don't  believe that [$3,550,000] is overmarket, as evidenced by the fact, first of all, that

Mr. Klingerman has bid that number, and also evidenced by [the] fact that [they] have an

appraisal that supports that numbers [sic]." *Id.* at 21:1-8.  Mr. Klingerman then requested, and

was granted, time to speak to his attorney.  *Id.* at 22:17-21.  After doing so, counsel for Mr.

Klingerman related that his client "was very upset about the way this has unfolded," that "his bid

[spoke] for itself," and that "he expect[ed] that after the sale [was] approved by the Court . . . on

July 23rd, that [counsel for the Trustee] would forward a contract of sale" and proceed forward.

*Id.* at 25:10-19.  Regardless of Mr. Klingerman's expression, there was ample time and

opportunity between the beginning of the Trustee's marketing the property and the sale for all

bidders, including Mr. Klingerman, to do due diligence and establish an opinion of value on

which to bid.[8]  Thus, the auction sale itself appears to have altered Mr. Klingerman's view of the

---

[7](...continued)
> and let me put this on the record.  The bid by Ms. Miles and Mr.
> Clark . . . is for $2,500,001.
> MS. MILES:  Yes, correct.

Defendant's Memorandum in Opposition, Adv. Pro. No. 09-03001, Adv. Doc. No. 32-7,
Transcript of 7/16/2008 Lack Placid Property Sale, at 20:2-7.

[8]In fact, such actions were required by the bidder under the express terms of the Bidding
Requirements elucidated in the Bidding Procedures, which state that:
> The bid acknowledges and represents that the bidder: (i) has had
> an opportunity to conduct *any and all due diligence regarding the*
> *Lake Placid Property prior to making its offer*; (ii) has relied
> solely upon its *own independent review, investigation and/or*
> *inspection of any documents and/or the Lake Placid Property* in
> making its bid; (iii) did not rely upon any written or oral
> statements, representations, promises, warranties or guaranties
> whatsoever, whether express, implied, by operation of law or
> otherwise, regarding the Lake Placid Property, or the completeness
> of any information provided in connection therewith or the
> Auction, except as expressly stated in these Bidding Procedures;

(continued...)

8

worth of his bid.  *Id.* at 23:9-15.  That change, however, is not grounds for failing to comply with and close on his bid.

During the post-sale course of the communications between Plaintiff's counsel and Mr. Klingerman's counsel, the Trustee sent a draft contract for Mr. Klingerman's signature.  The draft included ¶ 23, "Defaults and Remedies."  Defendant John D. Klingerman's Opposition to Trustee's Motion for Summary Judgment (hereinafter, the "Response"), Adv. Pro. No. 09-03001, Adv. Doc. No. 19-2, Residential Contract of Sale, at 7, ¶ 23.  This provision was a liquidated damages clause, which, had he signed, may have benefitted Mr. Klingerman by limiting the Seller (the Trustee) to receiving and retaining the $200,000 down payment in the event that the Buyer (Mr. Klingerman) defaulted.  However, Mr. Klingerman did not sign this contract.[9]  The Bidding Procedures state that if a successful bidder breaches, the "Trustee will not have any obligation to return the Good Faith Deposit" which "irrevocably will become property of the Debtor's estate."  Bidding Procedures, Adv. No. 08-03009, Adv. Doc. No. 33, Exhibit 2, at 5.  The express terms of the Bidding Procedures, therefore, did not establish a liquidated damages clause.  With no court approval of a liquidated damages clause and no signed contract limiting the estate's damages in that fashion, there is nothing that prohibits the Trustee from pursuing additional damages.[10]  The

---

[8](...continued)
and (iv) is willing to enter into a contract of sale in substantially the same form as that provided by the Trustee.
Bidding Procedures, Adv. Pro. No. 08-03009, Adv. Doc. No. 33, Exhibit 2, at 3, ¶ c of Bid Requirements (emphasis added).

[9]A sample form of contract with no purchaser identified therein was attached as Exhibit A to the Sale Order.  That form contained a liquidated damages clause, at Paragraph 23, in the event of default by the purchaser.

[10]Mr. Klingerman had previously been given the opportunity to present additional
(continued...)

Bidding Procedures and Sale Order, together with Mr. Klingerman's offer and the Trustee's

acceptance, are the only governing documents that exist between the Trustee and Mr.

Klingerman.

Analysis

The parties agree that the law of New York governs this dispute.  Motion, Adv. Pro. No.

09-03001, Adv. Doc. No. 11, at ¶¶ 27-28, 31, and 33; Response, Adv. Pro. No. 09-03001, Adv.

Doc. No. 19, at ¶¶ 27-28, 31 and 33.  Under New York law, a plaintiff will establish a breach of

contract by proving the existence of an agreement which was adequately performed by the

plaintiff but breached by the defendant and damages resulting from the breach.  *Eternity Global*

*Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004)

(citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)); *First Investors Corp. v. Liberty*

*Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).

The court may enter summary judgment where there are no material facts in dispute and

the moving party is entitled to judgment as a matter of law.  Fed. R. Bankr. P. 7056(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Robeson Indus. Corp. v. Hartford Accident & Indemn.*

---

[10](...continued)
evidence of a negotiated liquidated damages clause limiting the Trustee's damages to the Good
Faith Deposit.  Mr. Klingerman did not produce any additional evidence.  Under New York law,
a liquidated damages clause is never read into a contract by implication and, in this case, there is
no signed agreement containing a liquidated damages clause.  *See Winkelman v. Winkelman*, 208
A.D. 68, 70 (N.Y. App. Div. 1924).  Where a signed contract includes a purported liquidated
damages clause, "New York courts will construe [that] provision strictly and will sustain such a
provision only where the specified amount is a reasonable measure of the anticipated harm.
Thus the rule has evolved that where the damages flowing from breach of a contract are easily
ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the
stipulated sum will be treated as a penalty and disallowed."  *United States Fid. & Guar. Co. v.*
*Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) (citations omitted).

*Co.*, 178 F.3d 160, 164-65 (3d Cir. 1999).

Count I:

In this Count, the Trustee seeks judgment against Defendant Klingerman "for the full

amount of the unpaid damages caused as a result of Mr. Klingerman's breach of the bidding

procedures . . . ."  Amended Complaint, Adv. No. 09-03001, Adv. Doc. No. 3, at 10-11, ¶ 47.

The parties have stipulated to most of the material facts.  Those that were not subject to the

stipulation of facts have not been disputed by Defendant Klingerman.  What is in dispute is

whether the Trustee is entitled to recover an amount not less than $650,000[11] by which the estate

has been diminished as a result of Mr. Klingerman's failure to honor his signed agreement to

abide by the terms of the Bidding Procedures and to close the sale.  The court finds that, under

New York law, the Trustee is so entitled because he has established all of the elements of his

breach of contract claim.

The Trustee proved that there was an agreement between him as Seller and Mr.

Klingerman as Buyer for the sale of the Lake Placid property for a price of $3.55 million.[12]  The

court approved that sale by Order docketed on July 30, 2008.  Sale Order, Adv. Pro. No. 08-

03009, Adv. Doc. No. 55.  The Bidding Procedures, which were also approved by the court,

expressly provided that the parties were to close on a signed contract within the two weeks

---

[11]The $650,000 accounts for the $200,000 already recovered by the Trustee.

[12]The Bidding Procedures provide that, in order to qualify as a Qualified Bidder, each
Potential Bidder had to provide "[a] letter from a national bank evidencing the ability to timely
close its proposed transaction (*either in the form of a statement showing sufficient assets to
close, or a pre-approved mortgage commitment*) . . . ."  Bidding Procedures, Adv. Pro. No. 08-
03009, Adv. Doc. No. 33, Exhibit 2, at 2 (emphasis added).  As stated, Mr. Klingerman met this
condition and qualified as a bidder.

following issuance of the Sale Order.  Sale Authority Order, Adv. Doc. No. 08-03009, Adv. Pro.

No. 33, Exhibit 2, at 2.

All of the essential elements of a contract were formed: a written offer and acceptance for

purchase and sale of an identified real property for a specified price, to be closed within a set

time.  *See Sabetfard v. Djavaheri Realty Corp.*, 18 A.D.3d 640, 641 (N.Y. App. Div. 2d Dep't

2005) (finding that an agreement for the sale of real property that "identified the parties,

described the subject property, stated the time and terms of payment, established the closing date,

and was subscribed by the parties to be charged" satisfied the Statute of Frauds).[13]  In this

instance, where an auction was conducted for the sale of real property, Mr. Klingerman's written

submission of a bid constitutes the written offer which Trustee accepted through his written

motion to approve the same and entry of the Sale Order.[14]

There is no dispute that the Trustee accepted Mr. Klingerman's offer and complied with

---

[13]Defendant John D. Klingerman's Opposition to Trustee's Motion for Summary
Judgment (Adv. Proc. No. 09-03001, Adv. Doc. No. 19) did not raise the affirmative defense of
statute of frauds as required by Rule 7008 of the Federal Rules of Bankruptcy Procedure, which
makes applicable Rule 8 of the Federal Rules of Civil Procedure.  Under Fed. R. Civ. P. 8(c)(1),
"[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative
defense, including . . . statute of frauds. . . ."  Fed. R. Civ. P. 8(c)(1).  Even though Defendant
Klingerman raised a statute of frauds argument in his Memorandum of Law in Support of
Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Adv. Pro. No. 09-03001,
Adv. Doc. No. 29), this is insufficient to satisfy the requirements of Rule 8(c)(1).  Regardless of
whether the statute of frauds defense was raised appropriately, an enforceable order of this court,
which approved and confirmed the sale of the Lake Placid Property, was entered after a
negotiated agreement had been reached between the parties and that agreement required a
closing within two weeks of entry of the order.

[14]The Bidding Procedures provide that the "Trustee will be deemed to have accepted a
Qualified Bid only when the Qualified Bid(s) have been approved by the Court at the Sale
Hearing and an order reflecting such approval has been entered."  Bidding Procedures, Adv. Pro.
No. 08-03009, Adv. Doc. No. 33, Exhibit 2, at 5.  Such an Order (the Sale Order) was entered on
July 30, 2008, at Adv. Doc. No. 55 of Adv. Pro. No. 08-03009.

the court's Sale Order by preparing a contract and, after some delays,[15] setting a closing date.  The

Trustee, therefore, stood ready, willing and able to close, and adequately performed his part of the

agreement.  Mr. Klingerman concedes that he did not sign a contract or close the deal at any time,

much less within the time ordered by the court in its Sale Order.  Thus, he breached his

agreement.  The court determined as much in its Good Faith Deposit Order which, in pertinent

part, found that "Mr. Klingerman expressly agreed to the Bidding Procedures and to be bound by

them" and that "Mr. Klingerman is in material breach of the Bidding Procedures."  Good Faith

Deposit Order, Adv. Pro. No. 08-03009, Adv. Doc. No. 89, at 3, ¶¶ I and K.  Furthermore, Mr.

Klingerman's bid was a binding bid, a fact that was reiterated to Mr. Klingerman and his counsel

at the auction.[16]  Therefore, even though a residential sales contract was never signed, the Bidding

Procedures, the bid and the Sale Order establish all the elements of a written agreement between

the Trustee and Mr. Klingerman which was breached by Mr. Klingerman when he failed to sign

the contract and close on the sale.[17]

---

[15]Dawn Prosser removed certain items from the property, which Mr. Klingerman valued at about $100,000.  Subsequently, the Trustee recovered the items, or their equivalent value, so as to be able to close.

[16]Trustee's counsel stated on the record: "Let me make a comment here, that the bid is a binding bid.  Just as a matter of formality, and going forward with the bid as it currently stands, but it is binding, as is the deposit.  I just want to make sure that we're clear on that. . . ." Defendant's Memorandum in Opposition, Adv. Pro. No. 09-03001, Adv. Doc. No. 32-7, Transcript of 7/16/2008 Lake Placid Property Auction Sale, at 23:9-15.

[17]*See In re Chateaugay Corp.*, 186 B.R. 561, 593-94 (Bankr. S.D.N.Y. 1995) ("[T]he successful bidder at a bankruptcy sale is bound by the offer as stated and embodied in an approval order").  Further, while not binding on this court as precedential, the court finds *In re Moore*, 2008 Bankr. LEXIS 1120 (Bankr. D.S.C. 2008), to be relevant.  In that case, where a final contract of sale was not signed by both the seller/debtor and the buyer, the court held that "a bankruptcy court can bind a purchaser and seller with its sale order.  'Once an Order confirming a sale is entered, it is binding on the parties.  Their rights and obligations are fixed

(continued...)

Further, it is clear that the Debtor's estate was damaged and incurred a loss as a result of Mr. Klingerman's breach.  In the Good Faith Deposit Order which authorized the Trustee to retain the Good Faith Deposit, the court found that the "Debtor's estate has been damaged by Mr. Klingerman's breach of the Bidding Procedures."  Adv. No. 08-03009, Adv. Doc. No. 89, at 3, ¶ L.  That same order indicated that it did not "prohibit or limit the Trustee's or any other party's rights to seek additional damages against Mr. Klingerman in connection with his failure to close on the sale of the Lake Placid Property."  *Id.* at 4-5, ¶ 5.  There is no dispute that the Trustee eventually sold the property to a third party for $2,700,000.  Simple subtraction shows that the estate lost $850,000 in sales price alone.[18]  Thus, the Trustee has met all the elements necessary to establish his breach of contract claim.

Mr. Klingerman's defense is in the nature of mistake – not in failing to close but in failing to object to the Trustee's motion to retain the $200,000 down payment.  He claims that he would not have agreed to forfeit the $200,000 deposit had he known that the estate would seek the

---

[17](...continued)
thereby, and they are not permitted to deviate therefrom.  The purchaser is bound by the Order.'" 2008 Bankr. LEXIS 1120, *19 (quoting *In re Pizazz Disco & Supperclub, Inc.*, 114 B.R. 104, 108 (Bankr. W.D. Pa. 1990), *aff'd* 1991 U.S. Dist. LEXIS 19998, 1991 WL 331033 (W.D. Pa. 1991)).  The rationale behind that holding was that "[p]ublic policy requires stability in bankruptcy sales.  To induce bidding at such sales and reliance upon them, the purpose of the law is that they shall be final."  *In re Moore*, 2008 Bankr. LEXIS 1120, *20 (quoting *In re Winston Inn & Rest Corp.*, 120 B.R. 631, 635 (E.D.N.Y. 1990) (citations omitted)).  *See also*, *In re Homestead Indus., Inc.*, 138 B.R. 788, 790 (Bankr. W.D. Pa. 1992) ("If parties are to be encouraged to bid at judicial sales there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended" (citing *In re Webcor*, 392 F.2d 893, 898 (7th Cir. 1968)).

[18]Although the parties agree that the difference in the purchase price is $850,000, that amount does not account for the additional "carrying costs" incurred by this estate while the sale remained open.  The Prossers were paying nothing and the estate bore the costs of insurance, maintenance, etc., until the closing.

14

additional $650,000 against him.  He argues that he was lulled into this position because of the

Default Remedies paragraph in the draft contract that he did not sign and by the Trustee's

proposed order to this court seeking the $200,000 forfeiture, which proposed order did not reserve

or mention the right to bring an action for the additional $650,000.  As stated above, Mr.

Klingerman never executed the draft contract so whatever it says is of no moment here.  Further,

regardless of what language is put into an order proposed by a party, the court is the deciding

body as to the wording of an order.  Mr. Klingerman's choice not to participate in the hearing

regarding the forfeiture of the $200,000 was his own decision.  The reality is that there is no place

in the record of these proceedings where the court approved a liquidated damages clause, and

there is no contract between the parties that sets a limitation on the Trustee's recovery on behalf

of this estate.

New York law supports our conclusion.  In *Ryan v. Corbett*, 52 A.D.3d 1270, 1271 (N.Y.

App. Div. 4th Dep't 2008), the court stated that "the proper measure of damages is the difference

between the contract price and the amount received upon the subsequent sale '*unless* there is

evidence that the fair market value at the time of the breach is otherwise'" (quoting *Matzkowitz v.*

*Prince*, 195 A.D.2d 842) (N.Y. App. Div. 3d Dep't 1993) (emphasis in original).

The record in this case establishes that the Lake Placid property was listed and marketed

by a real estate broker who received several bids, following which an auction was conducted.

Thus, the market value has been set by the market test.  *Cf., Adirondack Trust Co. v. ROS Assocs.*,

144 A.D.2d 827, 828 (N.Y. App. Div. 3d Dep't 1988) ("The price paid at a public auction can

reflect a foreclosed property's fair market value (*see, First [Nat'l] Bank v. Intermont, Inc.*, 53

A.D.2d 760)").  Mr. Klingerman has submitted nothing to suggest a dispute as to the fair market

value of the property at the time of his breach.  With no agreement to limit damages and no

evidence disputing the fair market value as the highest price bid at the auction, under New York

law, the Trustee is entitled to the full measure of damages he seeks.[19]

Because Mr. Klingerman has paid over to the estate the $200,000 deposit, judgment will

be entered in favor of the Trustee and against Mr. Klingerman in an amount to be determined

after a status conference.[20]

Count II

In Count II of the Amended Complaint, the Trustee seeks to bar Mr. Klingerman from

defending this action based on res judicata and collateral estoppel.  Specifically, the Trustee

argues that, in the prior proceedings before us to determine liability, the court has already found

that Defendant Klingerman has breached the Bidding Procedures and, as a result, has damaged

the bankruptcy estate.  Motion, Adv. Pro. No. 09-03001, Adv. Doc. No. 11, at 11, ¶ 43.  Further,

the Trustee asserts that "Mr. Klingerman is collaterally estopped and precluded from disputing

that: (1) Mr. Klingerman [is] in material breach of the Bidding Procedures by failing to timely

enter into a contract or close on the sale of the Lake Placid Property; and (2) that the Debtor's

estate has incurred damages as a result thereof."  Amended Complaint, Adv. Pro. No. 09-03001,

Adv. Doc. No. 3, at 11, ¶ 52.

---

[19]*See also supra* note 10 and accompanying text.

[20]Mr. Klingerman may be entitled to certain credits against this judgment, due to a
settlement with Dawn Prosser in an action commenced by Dawn Prosser in another court and
due to the Stipulation between the Trustee and Dawn Prosser in this action.  Stipulation, Adv.
Pro. No. 09-03001, Adv. Doc. No. 28.  A status conference will be held to determine this issue
and an appropriate judgment will then be entered to reflect any credits to which Mr. Klingerman
may be entitled.

Mr. Klingerman, on the other hand, disputes the Trustee's request for partial summary judgment, submitting that "[o]nly after the Trustee brought this Adversary Proceeding did Mr. Klingerman learn that the Court could subject him to more than forfeiture of the earnest money deposit by reason of the additional provision asserted by the Court [in the Good Faith Deposit Order] but never mentioned in the motion and draft order proffered by the Trustee's attorneys" and that neither he nor his counsel ever "contemplate[d] a claim for damages in excess of the earnest money deposit." Defendant's Memorandum in Opposition, Adv. Pro. No. 09-03001, Adv. Doc. No. 29, at 12. Essentially, Mr. Klingerman is arguing that, because the damages in dispute in the current action, i.e., the $650,000 representing the difference in Mr. Klingerman's purchase price and the actual price for which the property was sold, are different from the $200,000 Good Faith Deposit at issue in the proceedings regarding the Good Faith Deposit Order, he is not collaterally estopped or precluded from litigating that issue in this adversary proceeding.

The court agrees that the Trustee's request for relief in this adversary proceeding is different from the turnover of the $200,000 deposit that was at issue in the proceedings related to the Good Faith Deposit Order.[21] The fact that the damages are different, however, does not

---

[21]To resolve the issue of Defendant Klingerman's failure to close the sale transaction, the Trustee initially sought the forfeiture of Klingerman's earnest money deposit which was specifically authorized in the Good Faith Deposit Order. Even though Klingerman initially objected to that resolution, counsel for Defendant Klingerman eventually acknowledged his acceptance of that remedy. Now, in this adversary proceeding, the Trustee seeks additional damages, i.e., the deficiency between the bid price at the auction sale and the final price at which the property was later sold. Klingerman is essentially arguing that, because the damages now sought by the Trustee in this adversary are different than those awarded by the court in its order authorizing Defendant Klingerman's good faith deposit to be turned over to the Debtor's estate (Adv. No. 08-03009, Adv. Doc. No. 89), the doctrines of collateral estoppel and/or res judicata do not apply. Defendant's Memorandum in Opposition, Adv. Pro. No. 09-03001, Adv. Doc. No. 29, at 11-12.

17

preclude the operation of the doctrines of collateral estoppel and res judicata.  Mr. Klingerman

has stipulated to two of the four facts the Trustee seeks to treat as collaterally estopped.[22]  He did

not stipulate that (1) he materially breached the Bidding Procedures by failing to sign a contract

or close the sale or (2) the estate was damaged by his breach.  Nonetheless, although the court did

make the findings as recited by the Trustee,[23] the court has reexamined the record as submitted by

the parties.  This record supports the court's earlier findings that Mr. Klingerman materially

breached the agreement and that his breach caused damage to the estate.  Mr. Klingerman had the

opportunity to fully litigate, and did fully litigate, the issue of liability regarding breach of the

Bidding Procedures.  Therefore, because the court has examined the evidence, the Trustee's

Motion for Partial Summary Judgment is determined to be moot with respect to Count II of the

Amended Complaint and this Count will be dismissed.[24]

---

[22]These two facts are that Mr. Klingerman agreed to be bound by the Bidding Procedures and that the Trustee complied with the terms of the Bidding Procedures deposit order.

[23]Defendant Klingerman filed a Motion for Reconsideration, asking this court to reconsider its October 31, 2008, Good Faith Deposit Order.  Motion for Reconsideration, Adv. Pro. No. 09-03001, Adv. Doc. No. 41.  The court considered that motion because Mr. Klingerman failed to attend the hearing before this court regarding the Trustee's request for forfeiture of the Good Faith Deposit.  After a thorough review of the record, including the consideration of Mr. Klingerman's late filings regarding the Motion for Reconsideration, the court denied that motion.  Order Denying Motion to Reconsider, Adv. Pro. No. 09-03001, Adv. Doc. No. 53.  Defendant Klingerman's Motion for Reconsideration was argued before the court at the February 26, 2010 omnibus hearing.  The court's March 3, 2010 order denying Defendant Klingerman's Motion for Reconsideration of the Good Faith Deposit Order is currently on appeal to the District Court of the Virgin Islands, Division of St. Thomas and St. John.

[24]Because of Mr. Klingerman's appeal pending before the District Court of the Virgin Islands (*see supra* note 23 and accompanying text), the court has taken the opportunity in this adversary proceeding to reexamine the record this in this case.  The fact remains that nothing in the record precludes the application of collateral estoppel or supports denying summary judgment with respect to the substantive merit of the two facts to which Mr. Klingerman did not stipulate.

18

Count VII

In Count VII of the Amended Complaint, the Trustee asks the court "to determine the respective rights and duties of the party or parties entitled to receive the Damages Reserve or portions thereof" pursuant to Fed. R. Civ. P. 22[25] and 28 U.S.C. § 1335.[26]  Adv. Pro. No. 09-03001, Adv. Doc. No. 3, at 14, ¶ 77.  The Stipulation entered into between the Trustee and Dawn Prosser has resolved Count VII as between the Trustee and Dawn Prosser.[27]  Adv. Pro. No. 09-03001, Adv. Doc. No. 28.  Thus, although Count VII is not included in the Trustee's Motion, the Stipulation appears to have rendered Count VII moot with respect to Defendant Dawn Prosser.  However, Mr. Klingerman, who was not a party to the Stipulation, has asserted an interest in the

---

[25]Rule 7022 of the Federal Rules of Bankruptcy Procedure makes Fed. R. Civ. P. 22(a) applicable in adversary proceedings.  Fed. R. Bankr. P. 7022.

[26]The Amended Complaint defines the "Damages Reserve" as "the proceeds attributable to Ms. Prosser's one-half interest on account of the removal of the Fixtures and the Damages Credit," pursuant to an order issued by the court on November 21, 2008 (Distribution Order, Adv. Pro. No. 08-03009, Adv. Doc. No. 110).  Amended Complaint, Adv. Pro. No. 09-03001, Adv. Doc. No. 3, at 10, ¶ 42.  The Amended Complaint states that the amount of the Damages Reserve is $109,310.60.  *Id.*; *Id.* at 2, ¶ 4.

[27]The Stipulation provides that the "Trustee shall . . . retain the Damages Credit, which shall be deemed property of the Debtor's estate."  Adv. Pro. No. 09-03001, Adv. Doc. No. 28, at 5, ¶ 5.  The "Damages Credit" is defined as the $9,310.60 credit given to Robert D. Clark and Toni R. Miles, the buyers of the Lake Placid Property, "on account of the estimated costs to repair damage caused by Dawn Prosser."  Amended Complaint, Adv. Pro. No. 09-03001, Adv. Doc. No. 3, at 10-11, ¶ 41.  Furthermore, the Stipulation provides that "[t]he Trustee and Ms. Prosser are desirous of resolving those issues regarding the [Lake Placid] Property, the [Lake Placid] Property Reserve and the Damages Reserve, without any admission of liability, and with a full reservation of rights with respect to any other aspect of this adversary proceeding" (Adv. Pro. No. 09-03001, Adv. Doc. No. 28, at 4, ¶ N) and that the "Stipulation represents the only agreement between the parties as to the [Lake Placid] Property, the [Lake Placid] Property Reserve and the Damages Reserve."  Adv. Pro. No. 09-03001, Adv. Doc. No. 28, at 6, ¶ 8.

19

Damages Reserve established by the Stipulation.  Thus, the court will conduct a status conference

regarding this Count.

Conclusion

An appropriate order will be entered.


DATE:    Dated:
10/29/2010
12:13:10

Judith K. Fitzgerald
U.S. Bankruptcy Judge

cjs

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
BANKRUPTCY DIVISION**

IN RE:
**JEFFREY J. PROSSER**

   Debtor.

Case No.: 06-30009 (JKF)
**Chapter 7**


**JAMES P. CARROLL, as Chapter 7
Trustee of the Estate of Jeffrey J. Prosser,**

   **Plaintiff,**

v.

**JOHN D. KLINGERMAN and DAWN
PROSSER,**

   **Defendants.**

Adv. Proc. No. 09-03001 (JKF)

**Related to Adv. Doc. No. 11**


**INTERIM ORDER GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON COUNT I AGAINST JOHN D. KLINGERMAN;
GRANTING OTHER RELIEF; and SETTING STATUS CONFERENCE AS TO ALL
OTHER COUNTS**

   Upon the "Amended Complaint of Chapter 7 Trustee Seeking Damages in Connection

with the Estate's Real Property Located at 89 Herbert Road, Lake Placid, New York and to

Interplead Certain Funds Held in Reserve" (hereinafter, the "Amended Complaint") dated January

23, 2009, of James P. Carroll, Chapter 7 Trustee for the bankruptcy estate of Jeffrey J. Prosser,

seeking judgment from this court: (a) against Defendant John D. Klingerman in an amount not

less than $650,000, for all outstanding damages as a result of his breach of the Bidding

Procedures; (b) against Defendant Dawn Prosser for the full value of the Damages Credit and

1

Fixtures, or alternatively directing Ms. Prosser to turn over the Fixtures; (c) against Dawn Prosser

to the extent the Court finds that Mr. Klingerman is not liable under Count I of the Amended

Complaint, in whole or in part, due to Ms. Prosser's removal of the Fixtures; (d) entering an

Order permitting the Trustee to interplead the Damage Reserve into Court; (e) awarding the

Trustee costs and upon the Trustee's Partial Motion for Summary Judgment Against All

Defendants (hereinafter, the "Motion") filed by the Trustee, seeking the entry of an order granting

summary judgment against Defendant John D. Klingerman as to Counts I and II and against

Dawn Prosser as to Count IV of the Amended Complaint, and proper and adequate notice of the

Motion and any hearing thereon having been given; and no other or further notice being

necessary; and after due deliberation thereon;

AND NOW, this **29th day of October, 2010**, for the reasons expressed in the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED**:

The Motion for Partial Summary Judgment is **GRANTED** as to Defendant John D.

Klingerman as to liability only on Count I of the Amended Complaint; and

It is **FURTHER ORDERED** that entry of a Judgment regarding damages is deferred on

Count I of the Amended Complaint pending the status conference scheduled herein; and

It is **FURTHER ORDERED** that Count II is **DISMISSED** as moot; and

It is **FURTHER ORDERED** as to Count VII of the Amended Complaint brought against

Defendant John D. Klingerman, a status conference will be held regarding Defendant

Klingerman's assertion of an interest in the Damages Reserve; and

It is **FURTHER ORDERED** as to Counts III, IV, V, VI and VII of the Amended

Complaint, brought against Dawn Prosser, the court previously approved a Stipulation between

2

Plaintiff Trustee and Defendant Dawn Prosser which may have resolved some or all of these

Counts.  Thus, so as to ascertain what, if any, further proceedings are pending on these Counts, as

well as to determine the effect, if any, the stipulation has on the damages owed by Defendant

Klingerman, a status conference will be held at the omnibus hearing on **January 25, 2011 at 9:00**

**a.m. (prevailing Eastern time).**  Counsel to Trustee, Dawn Prosser, and John D. Klingerman

shall appear and may do so telephonically by making the appropriate arrangements with

CourtCall not later than **NOON** prevailing Eastern time two business days prior to the hearing;

and

It is **FURTHER ORDERED** that counsel for the Plaintiff shall immediately serve a copy

of this Memorandum Opinion and Order on all parties in interest who do not receive electronic

notice and shall file a certificate of service forthwith.

Dated:
10/29/2010
12:13:52

*Judith K. Fitzgerald*

cjs

Judith K. Fitzgerald
United States Bankruptcy Judge

3